IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01968

TAYLOR SWENSON, on behalf of herself and all others similarly situated,
    Plaintiff.

v.

ALLIANCE MOVING AND STORAGE LLC,
B.I.D. COMPANY LLC d/b/a REAL MOVERS

    Defendants.

---

**COMPLAINT**

---

**INTRODUCTION**

1.    This action seeks damages, injunctive and declaratory relief on behalf of a class of all persons who hired Defendants for their interstate moves during 2018 to present. Through a common and uniform course of conduct, Defendants knew or should have known that they did not intend to honor their obligations under federal laws and the contracts they procured from customers. The purpose of this action is to hold Defendants and all those involved accountable for the maximum legal and equitable relief for defrauding the consuming public.

2.    The facts show Defendants engage in a scheme where they hold themselves out as interstate movers to consumers. Consumers typically find Defendant Alliance Moving and Storage LLC ("Alliance") through online searches, using search terms such as "best movers" or "best moving companies". Alliance provides a quote to the consumer after obtaining all their information for the move. Alliance then sends the consumers move information to one of their co-conspirators in the state where the customer lives. Then the Defendants initiate the first part of their scam, the bait and switch.

A moving truck that is too small is sent to the customers home on the day of their move. The customers are then told a much higher price is required to move their belongings. The new fee is often multiple times higher than their original quote. The customers generally have no choice but to comply as they are reliant on moving that day. Customer belongings are then loaded onto the moving trucks and moved to an unknow location.

The consumers are then scammed a second time. The movers then tell them again that additional fees are needed for the move. Their belongings are then held hostage for cash ransoms. The consumers are not told where their belongings are located, and they often go missing for several months. Defendant Alliance then acts as if it is intervening to find the property, but later denies liability. The property is often damaged or ruined when and if the consumer gets it back.

3. This action involves the Carmack Amendment, 49 U.S.C. §14706, which imposes strict liability upon common carriers for damages to goods in transit, among other causes of action, including deceptive business practices.

**PARTIES**

4. Plaintiff Taylor Swensen is a resident of Little River, South Carolina.

5. Defendant Alliance Moving and Storage LLC is ("Alliance") is a limited liability company organized and existing by virtue of the laws of Florida, with a purported office for the transaction of business at 450 Fairway Drive, Suite 103, Deerfield Beach, FL 33441.

6. Defendant B.I.D. Company LLC is a limited liability company organized and existing by virtue of the laws of Colorado, with a purported office for the transaction of business at 7350 E Progress Place, Suite 100, Greenwood Village, CO 80111. B.I.D. Company LLC does business as Real Movers.

**JURISDICTION AND VENUE**

7.      The Court has "federal question" subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as the claim set forth herein arises under federal statute 49 U.S.C. § 14706 (the "Carmack Amendment").

8.      More than 100 putative class members exist and the amount in controversy by any one plaintiff is not less than $25, nor less than $50,000 of the aggregate of all claims. At least one named Plaintiff is diverse from all defendants as Plaintiff Swenson is a citizen of a state different from Defendants. 15 U.S.C.A. § 2310(d)(3).

9.      Pursuant to the Class Action Fairness Act ("CAFA"), the aggregate claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and inclusive of punitive damages, treble damages, and attorney's fees. This is a class action in which many proposed plaintiff class members are citizens of different states from Defendant.

10.     The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. §1367(a) because the claim arose out of the same transaction.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant Real Movers LLC resides in Colorado. Venue is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the events or occurrences giving rise to the claims and injuries at issue occurred in this district, as Plaintiff Swenson's used to reside in Colorado, searched for moving companies from Colorado, Defendants' websites and e-mails procure business here, and their websites affirm they regularly conduct and transact business in this district.

12.     The Defendants are also subject to personal jurisdiction in Colorado under the Colorado Consumer Protection Act ("CCPA"). The Defendants violated C.R.S. 6-1-105(1)(b) by knowingly holding themselves out as a local moving company. Their website has clear language

stating they are "Denver Movers" or a "Moving Company in Denver". They never identify to the consumer that they are brokers.

13. The Defendants violated C.R.S. 6-1-105(1)(E) by creating the illusion of being a highly reputable moving company. Alliance has used a tactic of creating numerous false reviews of happy consumers. In realty, the Defendants have received the lowest ratings possible under legitimate consumer reviews sites such as the Better Business Bureau, Yelp, and Consumer Affairs. A reading of their BBB reviews shows a clear pattern of deceit. They have even been featured locally on Chanel 7 news for victimizing a 91-year-old woman who moved to Colorado from Arkansas.

14. The Defendants violated C.R.S. 6-1-105(1)(I) by providing a moving quote to consumers with no intent to honor it.

15. The Defendants violated C.R.S. 6-1-105(1)(M) by failing to deliver on the contract. The consumers personal belongings frequently go missing or are held hostage for an additional ransom.

16. The Defendants violated C.R.S. 6-1-105(1)(N) by initiating the bait and switch tactic of their scam. They accept a deposit from the consumers indicating a deposit was paid to Alliance Moving and Storage, located in Florida. However, they send one of their co-conspirators to move the consumers belongings, who unbeknownst to them, will charge astronomical additional fees and fail to deliver their belongings.

**FACTS**

<u>Plaintiff Swenson</u>

17. On or about May 3, 2021, the Plaintiff contacted Alliance Moving and Storage after searching for "Best moving company in Denver" or similar search terms. Defendant Alliance's website contained the following representation:

# So Far Voted #1 Moving Company of 2020



18. Plaintiff called, and a man named Christopher answered, who became her point of contact. Christopher asked what items needed to be moved and was told the Swenson family was moving from Kiowa, Colorado, to a 2-bedroom house in Little River, South Carolina. The Plaintiff also informed Christopher that they wished to move a piano, child's dirt bike, go-kart, and several other items. Christopher told them that he would send a moving truck with a 26-foot bed for their move. A separate auto transporter would be sent for the vehicles.

19. Christoher told Plaintiff the total price for the 26-foot moving truck would be $3,263.00, with a required deposit of $1,633.00. Another $800 would be required at the time of pick-up, and an additional $800 at the time of delivery. A link was provided, which would take Plaintiff to the details of the quote, online. The link has since been removed by the Defendant.

20. The Plaintiff called Christpoher again on May 4, 2021. She confirmed she was moving from a 3-bedroom home into a 2-bedroom home. Christopher indicated the deposit would be $1,746.22 because they were moving from a 3-bedroom house. The Plaintiff paid the deposit with her debit card. The Plaintiff believed she had hired a local moving company to complete her interstate move.

21. On May 17, 2021, Christopher called Taylor and informed her a man named Mike with Real Movers would be at her home on the day of her scheduled move. Mike arrived on May 19, 2021, the day of their scheduled move, in a Chevrolet pick-up truck towing a small trailer. He informed the Swenson's that they only paid for 443 cubic feet of space, and that their belongings would not fit in the trailer. Mike told them it would be an additional $6,500, paid in cash only, to move them. Additionally, he told them another $3,070 would be due upon delivery.

22. The Plaintiff, who was 7 months pregnant, had already sold her home and was expected to be out of the property. Therefore, she had no choice and obtained another $6,500 from her bank and paid Mike from Real Movers in cash. Mike loaded a few of their items into the small trailer. An employee from Real Movers told the Plaintiff that they would return the following day, May 20, 2021, to load the rest.

23. The Plaintiff rented a storage unit because her family had nowhere to store the already packed household furnishings and items. Real Movers returned on May 20, 2021. They loaded up their moving truck. However, they still could not fit all her belongings as promised. The Swenson's had to leave or give away many of their belongings.

24. The Defendants have promised the Plaintiff it would take between 1 and 24 business days for their items to be delivered. However, it has been almost 2 months and the Defendant has not delivered their items. The Swenson family is missing important and

irreplaceable items, such as items for the new baby, birth certificates, social security cards, antiques, and heirlooms.

## CLASS ALLEGATION

25. Upon information and belief, for years Defendant Alliance customarily held themselves out as a moving company with their own trucks when asked to induce consumers to enter into moving contracts with them that Defendants would not honor.

26. Plaintiffs bring this action on behalf of themselves, and a class of persons initially defined as follows, and based upon a three year statute of limitations under the CRS:

All persons who, within the applicable statute of limitations period, who were quoted a price by Defendant Alliance, and then were quoted a higher price on the date of moving by Defendant Real Movers or a moving company hired by Defendant Alliance

All persons who, within the applicable statute of limitations period, all those consumers who entered into a contract with Defendant Alliance Moving and Storage after being led to believe they were the moving company and later Alliance Moving and Storage denied liability for those consumers' property damage during the move by claiming they are only brokers.

27. Excluded from the Class are Defendants and any affiliate, parent, or subsidiary, any entity in which Defendants have a controlling interest, any officer, director, employee, successor or assign of Defendants, anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this case is assigned as well as his or her immediate family and staff.

28. The applicable criteria of Federal Rule of Civil Procedure Rule 23 are as follows:

<u>Numerosity</u>. Members of the Class are so numerous that their individual joinder herein is impracticable because it is composed of thousands of consumers geographically dispersed throughout Colorado and the United States. Numerosity is based upon the fact that there are over 80 complaints listed with the BBB and DOT about these Defendants, which common-sense dictates that number can be doubled or tripled as many consumers simply pay the ransom and do

not realize they have rights under the law or a forum to complain to. Thus, the number of class members is more than the at least 50 needed. Also, the Class is ascertainable and identifiable because the precise number of members of the Class can be ascertained through discovery of Defendants' sales, service, maintenance and complaint records, among other discovery to the DOT and local BBB bureaus, among other things.

Common questions. Common questions of law and fact exist as to all members of the putativeClass and predominate over questions affecting only individual Class members. Those common questions include:

a.   Whether Defendants violated the Carmack Amendment, as alleged in this complaint by convincing consumers they were a moving company and loading their property onto their trucksto be stolen and damaged, while Defendants and their subsidiaries, agents and employees misled consumers that they were resolving the damage when they were not, and did not intend to beliable, while they collected and received fees form the consumers.

b.    Whether Plaintiffs and the other putative Class members are entitled to equitable relief,including but not limited to restitution or a preliminary and/or permanent injunction, and

c.   Whether Plaintiff and the other Class members are entitled to damages and other monetaryrelief, including a one-time uniform payment representing the average damage amount of all claims.

Typicality. Plaintiffs' claims are typical of the claims of the Class because, among other things,Plaintiffs were induced into entering into moving contracts by Defendants holding themselves out as movers.

Adequacy. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they and theircounsel will fairly and adequately represent the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation to prosecute this action vigorously.

Superiority. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible as, upon information and belief, each member expended on average about $7,000.00 for their moves. Class members of moving scams cannot afford to sue such defendants as, for one thing, lawyers are not willing to take their cases since their total hours and fees for such actions are more than what may be recoverable and contingency arrangements are not worth these cases as single cases are not worth the amount of time nor can consumers afford to pay attorneys hourly as the time outweighs the damages. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing a myriad of actions,

individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system as presented by legal and factual issues of each case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

29. Alternatively, the Class may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a riskof inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of theinterests of other Class members not parties to the adjudications, or substantially impair orimpede Plaintiffs' ability to protect their interests; and

c. Defendants acted or refused to act on grounds generally applicable to the Class, for instancerefusing to comply with Federal interstate moving laws, particularly the Carmack Amendment;thereby making appropriate final and injunctive relief with respect to the members of the Classas a whole.

30. Class certification is also appropriate because Defendants acted or refused to act on grounds generally applicable to the Class, such as following the mandates of the Carmack Amendment and other applicable federal laws, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class members.

## CLAIM FOR RELIEF

### Count One: Carmack Amendment

31. Plaintiff repeats each and every allegation above as though fully set forth herein.

32. Defendants, as carriers and brokers, and their agents and employees, had duties under the Carmack Amendment, 49 U.S.C. §14706 to properly and carefully load, handle, stow, carry, keep, care for, discharge, and deliver the household goods carried in the same good order and condition as when tendered to and accepted and to provide a bill of lading.

33. Defendants assumed responsibility for, and were responsible for, the care and custody of the goods from the place of initial receipt to the place of intended delivery.

34. Defendants breached their duties under the Carmack Amendment by failing to properly and carefully load, handle, stow, carry, keep, care for, discharge, and deliver the goods carried in the same good order and condition as when tendered and accepted, and have refused to deliver the goods.

35. Defendants breached their duties under the Carmack Amendment by failing to provide the location of the goods that they are holding hostage at some undisclosed address or provide any evidence that the goods are not physically damaged, nor provide Plaintiff the opportunity to survey the condition of the goods, and/or take delivery of them or mitigate any damages.

36. By reason of the foregoing, Defendants were a receiving and/or delivering carrier and broker within the meaning of the Carmack Amendment, 49 U.S.C. §14706, an breached their duties under that statute and/or under the contract of carriage.

37. The Carmack Amendment holds all such carriers and owners of carriers liable, for which all individual Defendants are personally liable.

38. As a direct and proximate cause of all Defendants' breaches under the Carmack Amendment, Plaintiffs suffered damages over $100,000, which amount may be further determinable, and which was not the result of any contributing acts, omissions, negligence, or breach of contract on the part of the Plaintiff.

39. Defendants are jointly and severally liable for any and all damages for their violations of the Carmack Amendment, and the Carmack Amendment imposes strict liability for any breach.

### Count Two: Disgorge Profits

40.    Plaintiffs repeat each and every allegation above as though fully set forth herein.

41.    The unlawful conduct of all Defendants named herein constitutes deceptive, fraudulent, and wrongful conduct.

42.    By virtue of their wrongful conduct, all Defendants received money from Plaintiffs, profited from these illegal transactions and must return all such fees that rightfully belong to Plaintiffs, as their unlawful conduct warrants they disgorge all such monies, with interest, thereon.

### Count Three: Breach of Contract

44.    Plaintiffs repeat each and every allegation above as though fully set forth herein.

45.    Plaintiffs entered into a contract with Defendants, and fully complied with their side of the contract.

46.    Defendants materially breached the Contract by holding their property hostage for cash not contracted for, damaging their property, and not returning the property in the same condition as it was on the date of moving.

47.    As a direct and proximate cause of the breaches, Plaintiff and members of the putative class have been damaged in the amount to be ascertained but believed to be not less than $100,000.00.

### Count Four: Colorado Consumer Protection Act

48.    Plaintiffs repeat each and every allegation above as though fully set forth herein.

49.    The Defendant Alliance violated C.R.S. 6-1-105(1)(b) by knowingly holding themselves out as a local moving company. Their website has clear language stating they are "Denver Movers" or a "Moving Company in Denver". They never identify to the consumer that

they are brokers. The consumers are left to believe that they are hiring Alliance to move their belongings after initially contacting them for a quote.

50. The Defendant Alliance violated C.R.S. 6-1-105(1)(E) by creating the illusion of being a highly reputable moving company. Alliance has used a tactic of creating numerous false reviews of happy consumers. In realty, the Defendants have received the lowest ratings possible under legitimate consumer reviews sites such as the Better Business Bureau, Yelp, and Consumer Affairs. They have received an "F" rating by the BBB. They have even been featured locally on Chanel 7 news for victimizing a 91-year-old woman who moved to Colorado from Arkansas. A reading of their reviews shows numerus customers who have been deceived by the same deceitful tactics.

51. The Defendant Alliance violated C.R.S. 6-1-105(1)(I) by providing a moving quote to consumers with no intent to honor it.

52. The Defendant Alliance violated C.R.S. 6-1-105(1)(M) by failing to deliver a contract which stated all material terms.

53. The Defendant Alliance violated C.R.S. 6-1-105(1)(N) by initiating the bait and switch tactic of their scam. They accept a deposit from the consumers indicating a deposit was paid to Alliance Moving and Storage, located in Florida. However, they send one of their co-conspirators to move the consumers belongings, who unbeknownst to them, will charge astronomical additional fees and fail to deliver their belongings.

54. At all times relevant hereto, Defendants knew, or were willful in not knowing, that they were false and misleading in the manner referenced above. Defendants have an established history of deceiving consumers and the public the same way so they can gain control

of their property then hold it hostage for cash ransoms as numerous BBB and DOT complaints confirm.

55. As a direct and proximate result of Defendants frauds, deceptions, and deliberate violations of laws existing to protect consumers exactly from these frauds, Plaintiff and the putative class have suffered the conversion and loss of their property for months, were subjected to extortion demands for cash and the bult of their property was missing, damaged, or destroyed beyond repair.

56. Plaintiff and the putative class incurred expenses and costs as a result of the conduct of the Defendants.

57. The Plaintiff was forced to pay additional ransoms, had to rent a storage unit, and had to give away property they could not fit in the moving truck, and still have not received their property from the Defendants.

58. Defendants' acts and practices are not unique to the parties. These acts and practices of Defendants to deceive consumers, deliberately confuse them as to the nature of their company relationships and hold property hostage for cash are consumer-oriented and have a broader impact on consumers at large as numerous similar complaints exists online, including the BBB, DOT, and ConsumerAffairs websites.

59. All of the CCPA violations above were performed in the ordinary course of the Defendants' businesses.

60. The CCPA violations committed by the Defendants have a significant impact on the public because they include false advertising, which was disseminated to thousands of people, without intent to honor the representations in the advertisement, and also included fake reviews of satisfied customers. Most of Defendants' customers are ordinary people, who have no special

training in detecting fraudulent business practices.  Defendants engage in these types of practices with the majority of their customers.

61. Defendants Alliance and Real Movers have formed a civil conspiracy to violate the CCPA.  Defendant Alliance's role was to set the bait, fund the marketing, and sign up the consumers.  Defendant Real Mover's role was to switch the bait by showing up on the date of moving with intentionally inadequate moving equipment, and to force consumers to pay higher prices under duress to move their stuff.  Defendants then agreed to some type of profit-sharing arrangement to split the proceeds.  As such, both Defendant Alliance and Real Movers are jointly and severally liable to Plaintiff and the putative class for any judgment entered against the Defendants.

## Count Five: Permanent Injunction

62. Plaintiffs repeat each and every allegation above as though fully set forth herein.

63. USCS Fed Rules Civ Proc R 65 grants district courts the power to grant inunctions, which can be permanent, and declaratory relief is also permitted.

64. Plaintiffs and the consuming public suffer irreparable injury in the absence of an injunction that the Defendants violated numerous DOT and Federal and state laws by using false advertising, failing to provide Plaintiff Swenson's Bill of Lading, and deliberately confusing the public as to who is a broker or carrier and which LLC is controlling the move.

65.  Remedies as law, such as monetary damages, are inadequate to compensate for the injury because Defendants' misconduct leads to the loss of irreplaceable antiques and heirlooms that are not precisely quantifiable for the Plaintiffs and consumers at large. The balance of hardships tips in Plaintiffs and all consumers favor as undoubtedly no one can put a price on family heirlooms and antiques handed down from generations, once damaged, lost, or

stolen because of the frauds perpetrated by the Defendants then they can never be replaced, which consumers use these Defendants to protect their goods, not steal them.

66. The public has an interest in not being deceived by the Defendants who steal people's properties and engage in deceitful business practices.

## PRAYER FOR RELIEF

*WHERFORE*, Plaintiffs on their own behalf and on behalf of the Class demand judgment against Defendants as follows:

A. An order certifying the Class and appointing Plaintiffs and their counsel to represent it;

B. An order declaring as unlawful the conduct alleged to be a deceptive sales practice and violations of the Carmack Amendment, as well as related federal laws, and enjoining Defendants from continuing to engage in unlawful business practices as alleged herein;

C. An order awarding Plaintiffs and the members of the Class restitution or other equitable relief as the Court deems proper, including, consequential damages and treble damages;

F. An order awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest and treble damages and punitive damages;

G. An Order requiring Defendant to provide notice to the Class under Rule 23;

H. An order awarding Plaintiffs and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees;

I. An order and judgment awarding such other and further relief as the Court may deem just and proper and fair.

## TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

Dated: July 20, 2021

                Respectfully submitted,

                /s/ Matthew R. Osborne
                Matthew R. Osborne, P.C.
                11178 Huron St., Suite 7
                Northglenn, CO 80234
                Phone Number: (303) 759-7018
                Email: matt@mrosbornelawpc.com

                /s/ Christopher German
                Law Office of Christopher A. German, LLC
                7555 E Hampden Ave., Suite 600
                Denver, CO 80231
                Phone Number: (720) 675-8070
                Email: chrisgermanlaw@gmail.com

                *Attorneys for Plaintiff*